FILED

September 30, 2016

TN COURT OF
WORKERS'
COMPENSATION
CLAIMS

Time: 8:35 A.M.



TENNESSEE BUREAU OF WORKERS' COMPENSATION
IN THE COURT OF WORKERS' COMPENSATION CLAIMS
AT MEMPHIS

| | | |
|---|---|---|
| DEBBIE MORGAN, | ) | Docket No.: 2016-08-0270 |
| Employee, | ) | |
| | ) | |
| v. | ) | |
| MACY'S, | ) | State File No. 63707-2015 |
| Employer, | ) | |
| | ) | |
| and | ) | |
| MACY'S CORPORATE SERVICES, | ) | Judge Allen Phillips |
| Insurance Carrier. | ) | |

---

## EXPEDITED HEARING ORDER FOR MEDICAL BENEFITS AFTER REMAND

---

This matter came before the undersigned Workers' Compensation Judge upon remand from the Tennessee Workers' Compensation Appeals Board. The Appeals Board, in an opinion dated August 31, 2016, vacated this Court's July 12, 2016 order holding a surgery requested by Ms. Morgan was medically necessary. The Appeals Board remanded the case to this Court for reconsideration of its decision in light of only the evidence the Board deemed admissible. After reconsideration, this Court again finds Ms. Morgan is entitled to the requested surgery for the reasons set forth below.

### Procedural History

On March 15, 2016, Ms. Morgan filed a Petition for Benefit Determination (PBD) seeking medical and temporary disability benefits. (T.R. 1 at 1).[1] When the parties could not resolve the contested issues through mediation, the mediating specialist issued a Dispute Certification Notice (DCN) on May 2, 2016, listing "compensability" and

---

[1] The Court will refer to the Technical Record as "(T.R. at ___)" and to the Exhibits as "(Ex. _ at _.)" The Court listed the Technical Record and Exhibits in an Appendix to this Order and these represent the record made at the original Expedited Hearing with the exception of evidence the Appeals Board deemed inadmissible.

1

"medical benefits" as disputed issues. Macy's later requested the mediator more fully describe the issues as, "compensability— based on the nature of the incident itself and the primarily arising out of requirement— and the medical necessity of the fusion as recommended by the [authorized treating physician] pursuant to Tenn. [Comp.] R. & Regs. 0800-02-06 and 0800-02-06-25." (T.R. 2 at 3.) Ms. Morgan requested an Expedited Hearing, which the Court conducted on June 7, 2016.

Following the Expedited Hearing, and as relevant to this reconsideration, this Court found Ms. Morgan came forward with sufficient evidence for the Court to determine a surgery recommended by an authorized physician was medically necessary.[2] Macy's appealed. On August 31, 2016, the Appeals Board vacated this Court's decision regarding medical necessity and remanded the case for reconsideration of its decision "in light of the admissible evidence." *Morgan v. Macy's*, No. 2016-08-0270, TN Wrk. Comp. App. Bd. LEXIS 39, at *14 (Tenn. Workers' Comp. App. Bd. Aug. 31, 2016).

## Facts

Ms. Morgan works for Macy's as a sales associate. On July 9, 2015, in the course of her employment, she fell on a concrete floor, "jamming" her right shoulder. She felt immediate pain in both her right shoulder and her neck. Ms. Morgan began treatment with Dr. Samuel Schroerlucke, who the parties agree is an authorized physician.

Ms. Morgan first saw Dr. Schroerlucke on October 27, 2015, and reported "right arm and shoulder pains" and "neck pain and right upper extremity numbness that runs down into her first three fingers." (Ex. 1 at 1.)[3] Dr. Schroerlucke noted she had tried "a steroid pack with no relief" and "physical therapy for three weeks which gave her minimal relief." *Id.* On examination, he noted a "positive Spurling's to the right" and "severe pain running down her right arm" when extending her neck. *Id.*

On November 24, 2015, Dr. Schroerlucke noted an MRI, "reveal[ed] right C4-C5 and C5-C6 foraminal stenosis." (Ex. 1 at 4.) A subsequent EMG revealed "no abnormalities." *Id.* at 12. On January 5, 2016, Dr. Schroerlucke stated: "I think that her symptoms are coming from her cervical spinal stenosis." *Id.* On January 26, 2016, he noted that, "[i]f she continues to have a lot of symptoms . . . I will likely offer her a C4-C6 ACDF."[4] *Id.* at 31.

On February 2, 2016, Ms. Morgan returned "very frustrated with how much pain

---

[2] The parties argued additional issues of 1) this Court's jurisdiction to consider disputes regarding medical necessity; 2) whether an appeal of utilization review is a prerequisite to seeking relief in this Court; and 3) Ms. Morgan's entitlement to temporary disability benefits.

[3] The Court numbered the pages of Exhibit 1 sequentially in the lower right corner of each page. The Court reminds the parties, for future reference, that Rule 0800-02-21-.16(6)(c) requires the parties to number the medical records submitted as evidence.

[4] As noted by the Appeals Board, "ACDF" is an acronym for "anterior cervical discectomy and fusion."

she [was] having" and was "very interested in surgical intervention." *Id.* at 38. On examination, she had a "decreased right bicep reflex." *Id.* Dr. Schroerlucke diagnosed C4-C6 stenosis and right upper extremity radiculopathy. He stated:

> At this point I have recommended a C4-C6 ACDF. . . . We did talk about the fact that she had seen me in the past for a similar complaint. However, she says she was completely asymptomatic prior to her work injury. Therefore, this is an aggravation of a pre-existing asymptomatic condition that her work contributed more than 50% of the problem to.

*Id.*

On February 23, 2016, Dr. Schroerlucke noted Ms. Morgan continued complaining of pain in her neck and right upper extremity. He stated: "We are simply awaiting approval for her ACDF. I have nothing further to offer her at this time." (Ex. 1 at 41.) No further records of Dr. Schroerlucke are in evidence for purposes of this reconsideration.

Macy's requested UR review of the recommended surgery. On February 24, 2016, Dr. Robert G. Winans, a "Board Certified Orthopedic Surgeon" licensed in Tennessee, opined the "C4-6 ACDF" was "not authorized" pursuant to the criteria of the "ODG treatment guidelines" because, in pertinent part:

> Nothing definitely objectively abnormal was described as being present neurologically. There is no indication of the presence of spinal instability. There is no definite indication of the presence of a surgical lesion – some degenerative disc changes in the cervical spine are noted however there are no described objective signs or symptoms that can be directly related to these imaging findings. The electrodiagnostic test was negative for any radiculopathy. Guidelines state that there must be evidence of radicular pain and sensory symptoms in a cervical distribution that correlate with the involved cervical level or presence of a positive Spurling test. . . . Without a demonstration of spinal instability or objective neurological deficits including reflex depression, objective motor weakness or dermatomal sensory depression that correlate with imaging findings or distinct imaging study evidence of a surgical lesion and without attempting to resolve the problem nonsurgically in an intensive spinal rehabilitation program guidelines would not support proceeding with cervical fusion surgery.

(Ex. 2 at 1-2.)

Following the UR review, Macy's denied the ACDF procedure recommended by Dr. Schroerlucke, and Ms. Morgan filed her PBD on March 15, 2016.

Ms. Morgan was the only witness at the Expedited Hearing on June 7, 2016. She testified she continues to work for Macy's but that she continues to have pain in her neck and right upper extremity. She wore a "soft" collar. Because of adverse reactions, she cannot tolerate the use of pain medications. Her understanding is that Dr. Schroerlucke has nothing further to offer her apart from surgery and, though she does not "want" surgery, she will submit to it for relief of her pain and disablement.

Based upon the evidence at the first hearing, this Court found Dr. Schroerlucke's recommendation for surgery was presumed medically necessary pursuant to Tennessee Code Annotated section 50-6-204(a)(3)(I)(2015). Further, this Court found that Macy's had not rebutted the presumption of necessity by clear and convincing evidence by submission of the UR report. Based upon Dr. Schroerlucke's findings, and bolstered by Ms. Morgan's credibility, this Court found the recommended ACDF was consistent with the ODG treatment guidelines. The Court's resulting order for Macy's to pay for the surgery prompted Macy's appeal.

## Appeals Board Opinion

As relevant to this reconsideration hearing, the Appeals Board considered the issues of the admissibility of certain medical records and the applicable law regarding the presumption of medical necessity.

First, regarding the admissibility of medical records, the Board noted this Court admitted into evidence the UR report of Dr. Robert Winans and all of Dr. Samuel Schroerlucke's medical records. *Morgan*, at *10-11. The Board further noted this Court deemed Dr. Schroerlucke's records admissible because Dr. Winans relied upon them in his UR report and because the records bore an electronic signature. *Id.* at *11. Regarding one particular record of Dr. Schroerlucke, the Board stated:

> Later in the hearing, Employer objected to the introduction of a specific record from Dr. Schroerlucke dated March 15, 2016 because it was not included within the scope of the medical record certification dated March 10, 2016. After examining the report, the trial court noted that it contained the physician's initials at the end of the record and stated, "that's good enough for electronic signature under our . . . standards."

*Id.*

The Board cited Tennessee Compilation Rules and Regulations 0800-02-21-.16(6)(b), which provides that, "[a]ll medical records signed by a physician or accompanied by a certification that the records are true and accurate which has been signed by the medical provider or custodian of records shall be admissible." In this case, the Board found this Court properly admitted all records of Dr. Schroerlucke "dated on or

4

prior to the date of the medical certification form[.]" *Id.* at *13. However, the Board found this Court erred in admitting into evidence Dr. Schroerlucke's note of March 15, 2016, because it was not included in the records certified by his office as being true and accurate. Thus, it was not "accompanied by a certification" as required by Rule 0800-02-21-.16(6)(b). Further, the Board stated:

> We respectfully disagree with the trial court that a mere typed notation which purports to be a physician's initials at the end of a record is sufficient, standing alone, to satisfy requirements for admissibility. The purpose of the rule is to provide an efficient and cost-saving means of introducing medical records as evidence when such records have basic indicia of reliability. The rule is not burdensome, requiring either a physician's signature on the record itself or an accompanying certification form signed by a custodian of the records. The trial court concluded that an electronic signature complies with the rule and that a physician's typed initials at the end of the document are the equivalent of an electronic signature. Without fully resolving the issue of what constitutes a valid electronic signature, we disagree that mere typed initials at the end of the document are sufficient.
>
> Therefore, we conclude it was error for the trial court to accept Dr. Schroerlucke's March 15, 2016 report as evidence at the expedited hearing.

*Id.* at *14-15.

Second, the Board considered, "the relationship between the newly-adopted medical treatment guidelines and the presumptions outlined in Tennessee Code Annotated section 50-6-204(a)(3)(H) and (I)." *Id* at *15. When so doing, the Board found this Court "concluded that the presumption that the authorized physician's recommended treatment is medically necessary could be overcome only by clear and convincing evidence." *Id.* at *15. The Board disagreed. Instead, the Board held that "a trial court can apply one of two potential presumptions to the issue of medical necessity in any given case." *Id.* at*17.

In so finding, the Board first cited Tennessee Code Annotated section 50-6-204(a)(3)(H), which provides "a presumption of medical necessity for 'any treatment recommended by a physician or chiropractor selected pursuant to this subdivision (a)(3) or by referral, if applicable.'" *Id.* at *15. The Board then cited section 204(a)(3) discussing this presumption as follows:

> Following the adoption of treatment guidelines pursuant to § 50-6-124, the presumption of medical necessity for treatment recommended by a physician or chiropractor selected pursuant to this subsection or by referral,

5

if applicable, shall be rebuttable only by clear and convincing evidence demonstrating that the recommended treatment substantially deviates from, or presents an unreasonable interpretation of, the treatment guidelines.

*Id.*

Further, in Tennessee Code Annotated section 50-6-124(h) the Board noted that "the legislature also discussed this presumption" as follows:

Any treatment that explicitly follows the treatment guidelines adopted by the administrator or is reasonably derived therefrom, including allowances for specific adjustments to treatment, shall have a presumption of medical necessity for utilization review purposes. This presumption shall be rebuttable only by clear and convincing evidence that the treatment erroneously applies the guidelines or that the treatment presents an unwarranted risk to the injured worker.

*Id.* at \*16 (emphasis by Appeals Board).

Based upon these statutes, the Board found that the first presumption that a trial court might utilize is one that treatment recommended by an authorized physician is "presumed medically necessary" subject to rebuttal by the employer by a preponderance of the evidence. *Id.* at \*17; *see, e.g., Walker v. G.UB.MK Constructors*, No. E2015-00346-SC-R3-WC, 2016 Tenn. LEXIS 313 (Tenn. Workers' Comp. Panel May 2, 2016). The Board found the second presumption that a trial court might consider is one that arises when the "employee establishes by expert medical evidence that the recommended treatment" of an authorized physician "explicitly follows the treatment guidelines" or "is reasonably derived therefrom." In those instances, the burden shifts to the employer to rebut the presumption of medical necessity by clear and convincing evidence. *Id.* at \*18.

Guided by the directives of the Appeals Board, the Court will reconsider the issue of medical necessity under the standards outlined by the Board and in light of the evidence deemed admissible by the Board.

**Findings of Fact and Conclusions of Law**

*Standard Applied*

At this expedited hearing stage of the proceedings, Ms. Morgan need not prove every element of her claim by a preponderance of the evidence in order to obtain relief. *McCord v. Advantage Human Resourcing*, No. 2014-06-0063, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at \*7-8, 9 (Tenn. Workers' Comp. App. Bd. Mar. 27, 2015). Instead, she must come forward with sufficient evidence from which this Court might determine

6

she is likely to prevail at a hearing on the merits. *Id.*; Tenn. Code Ann. § 50-6-239(d)(1) (2015).

*Evaluation of Medical Necessity In Light Of Evidence Deemed Admissible By The Appeals Board*

For purposes of this interlocutory proceeding, the parties agree Dr. Schroerlucke is an authorized physician. Accordingly, pursuant to Tennessee Code Annotated section 50-6-204(a)(3)(H), his recommendation that Ms. Morgan undergo an ACDF surgery is presumed medically necessary. Macy's must rebut this presumption.

As noted above, the Board detailed two distinct standards by which Macy's might rebut the presumption of necessity of Dr. Schroerlucke's treatment. First, if the treating physician's recommended treatment does not "explicitly follow," or if it is not "reasonably derived," from the ODG guidelines, then the employer need only rebut the authorized physician's recommendation by a preponderance of the evidence. *Morgan*, at \*19. Second, if the employee does establish that the authorized physician followed the ODG guidelines in recommending treatment, then the employer must rebut the presumption of medical necessity by clear and convincing evidence. *Id.* Our Supreme Court instructs that a preponderance of the evidence standard requires that the truth of the facts asserted be more probable than not, whereas the clear and convincing evidence standard requires that the truth be highly probable. *Teter v. Republic Parking Sys.*, 181 S.W.3d 330, 341 (Tenn. 2005).

In this case, the Board found Ms. Morgan "did not offer proof at the expedited hearing that [Dr. Schroerlucke's recommendation for surgery] 'explicitly follows the treatment guidelines' or 'is reasonably derived therefrom.'" *Id.* at \*18. Thus, this Court can only consider the evidence deemed admissible by the Board against the first standard above: namely, did Macy's rebut Dr. Schroerlucke's recommendation for surgery by a preponderance of the evidence? This Court finds it did not.

The only opinion with which Macy's might rebut the medical necessity of Dr. Schroerlucke's surgery recommendation is that of Dr. Winans. At the hearing, Macy's argued that Dr. Winans found the ACDF was not medically necessary because there was, 1) an absence of an EMG showing radiculopathy, 2) no evidence of spinal instability, and 3) no definite indication of a surgical lesion. When further reviewing Dr. Winans' report, the Court again notes, as it did at the first hearing, that he opines the, "Guidelines state that there must be evidence of *radicular pain and sensory symptoms in a cervical distribution* that correlate with the involved cervical level *or presence of a positive Spurling's sign*." (Ex. 2 at 2.) (Emphasis added.) Dr. Winans also stated, "[w]ithout a demonstration of spinal instability *or* objective neurological deficits including *reflex depression*, objective motor weakness or dermatomal sensory depression that correlate with imaging findings . . . of a surgical lesion . . . [the] guidelines would not support

7

proceeding with cervical fusion surgery." (Ex. 2 at 2.) (Emphasis added.)

The Court finds Dr. Schroerlucke documented Ms. Morgan had a positive Spurling's sign on October 27, 2015. According to Dr. Winans' interpretation of the ODG Guidelines, a positive Spurling's sign is one prerequisite for an ACDF. Further, Dr. Schroerlucke found diminished biceps reflexes on the right on February 2, 2016. "Reflex depression" is also specific indicia of the need for surgery, according to Dr. Winans. Finally, Dr. Schroerlucke noted right upper extremity radiculopathy and cervical stenosis throughout his treatment of Ms. Morgan. Again, Dr. Winans specifically states the ODG Guidelines require such findings as prerequisites for an ACDF.

Because Dr. Schroerlucke documented the very criteria that Dr. Winans opines are necessary under the ODG Guidelines for an ACDF, the Court finds Macy's did not rebut the presumption of medical necessity through Dr. Winans' report. In so finding, this Court recognizes its inability to "independently assess an injured worker's symptoms as described in the medical records." *Morgan,* at *18, *citing Scott v. Integrity Staffing Solutions,* No. 2015-01-0055, 2015 TN Wrk. Comp. App. Bd. LEXIS 24, at *8 (Tenn. Workers' Comp. App. Bd. Aug. 18, 2015). Thus, it confined its analysis to the "conflicting [and] countervailing evidence properly admitted into the record," namely, the findings and opinions of Dr. Winans juxtaposed against those of Dr. Schroerlucke. *Scott,* at *8.

As noted in its first order, the Court found Ms. Morgan credible. Tennessee law has long held that medical proof is not to be "read and evaluated in a vacuum" but, instead "must be considered in conjunction with the lay testimony of the employee as to how the injury occurred and the employee's subsequent condition." *Thomas v. Aetna Life & Cas. Co.,* 812 S.W.2d 278, 283 (Tenn. 1991). Ms. Morgan consistently reported the same complaints throughout Dr. Schroerlucke's course of treatment. Her expressed desire to recover, even with endurance of surgery, is believable and sincere. She testified to her areas of pain, her intolerance to pain medications and to her failure to improve with conservative care. This Court finds nothing in the 2013 Reform Act that lessens the importance of an employee's credibility to an accurate diagnosis or treatment regimen. This Court also notes our Supreme Court instructs that it stands to reason that the physician having the most contact with the patient might provide a more accurate opinion regarding necessary treatment. *Orman v. Williams Sonoma, Inc.,* 803 S.W.2d 672, 677 (Tenn. 1991). Dr. Schroerlucke fits that description.

*Temporary Disability Benefits*

The issue of entitlement to temporary disability remains premature because Ms. Morgan has yet to be restricted from work due to medical treatment. If she is so restricted, then Macy's would be responsible for same if the inability to work is causally-related to any treatment for her injury of July 9, 2015.

8

**IT IS, THEREFORE, ORDERED** as follows:

1. Macy's shall pay for the surgery recommended by Dr. Schroerlucke, the authorized treating physician. Further, Macy's shall remain responsible for all other reasonable and necessary medical expenses related to the injury of July 9, 2015.

2. This matter is set for a Status Hearing on January 11, 2017, at 10:30 a.m. Central Time.

3. Unless interlocutory appeal of the Expedited Hearing Order is filed, compliance with this Order must occur no later than seven business days from the date of entry of this Order as required by Tennessee Code Annotated section 50-6-239(d)(3) (2015). The Insurer or Self-Insured Employer must submit confirmation of compliance with this Order to the Bureau by email no later than the seventh business day after entry of this Order. Failure to submit the necessary confirmation within the period of compliance may result in a penalty assessment for non-compliance. For questions regarding compliance, please contact the Workers' Compensation Compliance Unit via email WCCompliance.Program@tn.gov or by calling (615) 253-1471 or (615) 532-1309.

**ENTERED this the 30th day of September, 2016.**

**Judge Allen Phillips**
**Court of Workers' Compensation Claims**

Status Hearing:

An Status Hearing has been set with **Judge Allen Phillips, Court of Workers' Compensation Claims. You must call 731-422-5263 or toll-free at 855-543-5038 to participate in the Initial Hearing.**

**Please Note: You must call in on the scheduled date/time to participate. Failure to call in may result in a determination of the issues without your further participation.**

Right to Appeal:

Tennessee Law allows any party who disagrees with this Expedited Hearing Order to appeal the decision to the Workers' Compensation Appeals Board. To file a Notice of Appeal, you must:

1. Complete the enclosed form entitled: "Expedited Hearing Notice of Appeal."

2. File the completed form with the Court Clerk *within seven business days* of the date the Workers' Compensation Judge entered the Expedited Hearing Order.

3. Serve a copy of the Expedited Hearing Notice of Appeal upon the opposing party.

4. The appealing party is responsible for payment of a **filing fee in the amount of $75.00.** Within ten calendar days after the filing of a notice of appeal, payment must be received by check, money order, or credit card payment. Payments can be made in person at any Bureau office or by United States mail, hand-delivery, or other delivery service. In the alternative, the appealing party may file an Affidavit of Indigency, on a form prescribed by the Bureau, seeking a waiver of the filing fee. The Affidavit of Indigency may be filed contemporaneously with the Notice of Appeal or must be filed within ten calendar days thereafter. The Appeals Board will consider the Affidavit of Indigency and issue an Order granting or denying the request for a waiver of the filing fee as soon thereafter as is practicable. **Failure to timely pay the filing fee or file the Affidavit of Indigency in accordance with this section shall result in dismissal of the appeal.**

5. The parties, having the responsibility of ensuring a complete record on appeal, may request, from the Court Clerk, the audio recording of the hearing for the purpose of having a transcript prepared by a licensed court reporter and filing it with the Court Clerk within ten calendar days of the filing of the Expedited Hearing Notice of Appeal. Alternatively, the parties may file a joint statement of the evidence within ten calendar days of the filing of the Expedited Hearing Notice of Appeal. The statement of the evidence must convey a complete and accurate account of what transpired in the Court of Workers' Compensation Claims and must be approved by the workers' compensation judge before the record is submitted to the Clerk of the Appeals Board.

6. If the appellant elects to file a position statement in support of the interlocutory appeal, the appellant shall file such position statement with the Court Clerk within five business days of the expiration of the time to file a transcript or statement of the evidence, specifying the issues presented for review and including any argument in support thereof. A party opposing the appeal shall file a response, if any, with the Court Clerk within five business days of the filing of the appellant's position statement. All position statements pertaining to an appeal of an

interlocutory order should include: (1) a statement summarizing the facts of the case from the evidence admitted during the expedited hearing; (2) a statement summarizing the disposition of the case as a result of the expedited hearing; (3) a statement of the issue(s) presented for review; and (4) an argument, citing appropriate statutes, case law, or other authority.

## APPENDIX

Exhibits:
1. Medical Records of Tabor Orthopedics from October 27, 2015, through February 23, 2016; and
2. Utilization Review Report of Genex Services (Dr. Winans).

Technical record:
1. Petition for Benefit Determination;
2. Dispute Certification Notice;
3. Request for Expedited Hearing;
4. Correspondence from Macy's requesting in-person evidentiary hearing; and
5. Employer's Pre-Hearing Brief, Exhibit List, and Witness List.[5]

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Expedited Hearing Order was sent to the following recipients by the following methods of service on this the 30th day of September, 2016.

| Name | Certified Mail | Via Fax | Via Email | Service sent to: |
|---|---|---|---|---|
| Andrew L. Wener, Esq. Employee's Counsel | | | X | awener@wenerlawfirm.com |
| J. Allen Callison, Esq. Employer's Counsel | | | X | acallison@cartwelllaw.com |

Penny Shrum, Clerk of Court
**Penny Shrum, Clerk of Court**
**Court of Workers' Compensation Claims**
**WC.CourtClerk@tn.gov**

---

[5] The Court did not consider attachments to Technical Record filings unless admitted into evidence during the Expedited Hearing. The Court considered factual statements in these filings or any attachments to them as allegations unless established by the evidence.